## INTERNATIONAL BANDING MACH. CO. v. AMERICAN BANDER CO., Inc.

(Circuit Court of Appeals, Second Circuit. June 16, 1925.)

No. 336.

1. Patents ⬦328—920,698, claims 22, 88, for cigar banding machine, valid and infringed; claim 97 not infringed.

Wagner & Malocsay patent, No. 920,698, May 4, 1909, claims 22, 88, for device for banding and labeling cigars and other articles, *held* valid and infringed, and claim 97 not infringed.

2. Patents ⬦178—Rule for construction of claim stated.

Court should read claim in light of entire disclosure of patent as a whole, and interpret expression positively recited as satisfied by any suitable instrumentality capable of performing stated functions successfully, unless so doing violates some other patent.

3. Patents ⬦165—Positively recited generic expression in claim not limited to precise instrumentality disclosed by patent.

Court should never interpret a positively recited generic expression in claim as limited to precise instrumentality disclosed by patent, except where necessary to distinguish claim from prior art.

4. Patents ⬦328—1,261,832, claim 5, for cigar banding machine, valid and infringed.

Malocsay patent, No. 1,261,832, April 9, 1918, claim 5, for device for banding and labeling cigars, *held* valid and infringed.

5. Patents ⬦168(2)—Patentee not estopped to interpret claim narrowly, as originally presented and allowed.

Patentee, whose attorney voluntarily amended and broadened claim after its allow-

ance by patent office, *held* not estopped to interpret claim in narrower form, as originally presented and allowed.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the International Banding Machine Company against the American Bander Company, Inc. From a decree dismissing bill (4 F.[2d] 726), plaintiff appeals. Reversed.

Julius M. Mayer, C. A. L. Massie, Jacob Schechter, John L. Lotsch, Mayer, Warfield & Watson, and Schechter & Lotsch, all of New York City, for appellant.

Charles Neave and Merrell E. Clark, both of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge: [1] Appellant sues claiming infringement of claims 22, 88, and 97 of patent No. 920,698, granted May 4, 1909, on application filed April 26, 1907, and claim 5 of patent No. 1,261,832, granted April 9, 1919, on application filed May 11, 1916. Both patents relate to a banding machine which is used for banding cigars.

The first patent (No. 920,698) has 97 claims, and claims 22, 88, and 97 are as follows:

"22. A machine for applying bands to cigars and other articles, provided with a vertically disposed U-shaped suction device and movable means for supporting bands above said device, so that when said device is raised it engages the lowest band and when lowered withdraws it from the pile, leaving all other bands in said supporting means."

"88. A machine for applying bands to cigars and other articles, provided with a support adapted to engage the lowermost band of a pile of bands to support the latter and to form a space between the lowermost band and the next one above, and means adapted to pass into said space to support pile of bands on withdrawing the said support."

"97. In a machine of the class described, means for holding a pile of labels, said means including reciprocating tongues which at times support said pile, pneumatic means adapted to rest against the lowest label of said pile and hold said lowest label slightly flexed and means for reciprocating said tongues so that they support said pile when not supported by the said pneumatic means and cause said tongues to enter between said lowest label and the pile while said lowest label is flexed."

The second patent (No. 1,261,832) has 17 claims, and claim 5 reads as follows:

"5. In a machine of the class described, the combination of the band container, of a reciprocating conveyor, suction means for withdrawing bands individually from said container, means on said conveyor for receiving the band from the suction means and holding the same on the conveyor, moistening means, and band-applying mechanism, conveyor adapted to transfer the band to the moistening means and thence to the band-applying means."

The object of the invention of the first patent is said to provide a new and improved banding machine, designed for rapidly and accurately applying bands or labels to cigars and other articles and to wrap the same singly around the articles and secure their overlapping ends together, without danger of injury to the articles or to the bands or labels.

The object of the second patent is said to provide a machine which will securely, accurately, and rapidly apply bands to cigars and other articles where an adhesive is used, and it is desired to return the cigars to the box whence they came without turning them in any way so that, if they happen to be dry, they will go back exactly as they came out, and thereby escape all injury. The second patent is said to be a patentable improvement over the first patent, and the machine is claimed to be a pioneer machine for banding boxed cigars. The first patent is a pioneer for banding cigars of any sort, particularly loose cigars. But the first patent did not band boxed cigars with sufficient rapidity for the trade. It is pointed out that cigar banding differs from label applying machines of the prior art, because labels are pasted directly to the surface of the bottles or boxes, whereas cigar bands are neither pasted to the surface nor the wrapper of the cigar, but are banded around the cigar, and this is usually done when the cigar is dry and somewhat brittle. Gum or paste is applied to only a small surface of one of the very narrow ends of the cigar band, and the band is then wrapped around the cigar with its narrow end gummed and aligned and slightly overlapping the other narrow end, and stuck thereto. It is desirable that the adhesive should not be allowed to come in contact with the cigar itself. Care must be taken to avoid the wrapper of the cigar becoming cracked or broken. In case of boxed cigars, special care must be taken in handling the cigars as well

as in the banding, so that the overlapping ends of the bands are truly aligned and proper fit made for their reception back into the box. The first patent provides for a complete machine comprising the combination of a plurality of co-ordinating mechanisms, the details of which mechanisms we need not consider.

The main elements with which we have to do consist of a hopper containing a supply of cigars to be banded; mechanism for presenting one band at a time to a location where it is to be banded, and in proper alignment to receive the band; a magazine containing a supply of assembled cigar bands; a separator for withdrawing individually one cigar band at a time and presenting it in proper alignment for the ensuing steps; means for applying wet gum or paste to a small area near one end of the withdrawn band; means, called the conveyor, for carrying the freshly gummed band on its way, in proper alignment for the ensuing steps; means for applying the band around the positioned cigar, thus wrapping the band around the cigar with its plain end and its gummed end overlapped, and causing them to stick together; and means for ejecting the banded cigar. Claims 22, 88, and 97 relate to the magazine and separator. They should be regarded as part of the complete machine— a machine for wrapping such things as small and frail cigar bands around cigars. The claims are not for a magazine and separator per se. Each of the claims begins with reference to a machine "for applying bands to cigars and other articles." They all specify in appropriate words a particular invention for embodiment in a successful cigar banding machine.

[2, 3] It is the duty of the court to read a claim in the light of the entire disclosure of the patent as a whole. It will interpret an expression positively recited in the claim as satisfied by any suitable instrumentality capable of performing the stated function successfully, unless, by so doing, violence to some other patent may be committed. It should never interpret a positively recited generic expression as limited to the precise instrumentality disclosed by the patent, except where such narrow interpretation is necessary to distinguish the claim from the prior art. In such cases, the courts will always do so in order to uphold the validity of the claim where that is possible.

In claim 5 of the second patent, it will be noted that the machine is intended for use in boxed or packed cigars. One of the purposes is to band the cigars without turning them; that is, rotating or rolling them. The main elements of this claim are: (1) The magazine which contains the assemblage of cigar bands and which is like the first patent in suit. (2) A pneumatic separator, which draws the individual cigar bands successively, also like the pneumatic separator in the first patent. (3) A reciprocating conveyor which receives from the separator each withdrawn band, and conveys the band to the next two mechanisms, and then releases the band and returns at once along its former pathway and is ready to receive the next band. This differs from the unidirection conveyor of the first patent, which travels around a circuit with intermediate movement, and is a direct and active factor in performing the operation of wrapping the band around the cigar, and is the sole factor that ejects the cigar when banded. (4) The suction means on the conveyor for receiving the withdrawn band from the separator and holding the band while on its way. This is somewhat like the first patent. (5) The moistening means which is located adjacent to the pathway of the conveyor for moistening the dry adhesive already present on a small portion of one of the narrow ends of the cigar bands, which is drawn over said moistener by the conveyor. This differs from the means in the first patent, which provides a fountain roller adjacent to the exit of their magazine. The fountain roller is rolled over the end of the band before the latter has been received by the conveyor, and while the band is held stationary by the separator in a location where the wet gum or paste is likely to spread over other parts of the band and to splash on the band above it in the magazine or in some movable part of the machine, in every such case wet adhesive may be imparted to the cigar. (6) The band applying mechanism consists of (a) a traveling conveyor; (b) a long and gradually closing tunnel, through which the conveyor carries a band and a superposed cigar. The coaction of tunnel and unidirection conveyor wraps the ends of the band around the cigar and into lapped relation, and causes these ends to stick together; and further travel of the conveyor ejects the banded cigar lengthwise. This mechanism of the second patent comprises a means for presenting the cigar band in transverse position above the horizontal cigar. It has two depending arms that descend simultaneously on opposite sides of the cigar, their lower ends bringing down on the band and the underlying cigar a flexible tape, said arms being pivoted independently and actuated successively to tuck first one and

then the other end of the cigar band into lapped relation under the cigar. There is a separately moving pad for pressing together the lapped ends and causing them to stick, and a separately moving means for ejecting the cigar when banded. Thus it appears that there is a co-operative combination which consists of the elements referred to. The claim is to be treated as an indivisible entirety. It may not be said to be anticipated by a prior machine which was neither designed nor adapted nor used for performing the functions of such cigar banding combination.

In the first patent, there is an endless sprocket chain or conveyor, which is provided with a plurality of suction ports for holding and carrying the cigar bands. Above it rises the magazine with its assembled cigar bands placed therein, and beneath it is the pneumatic separator and gum applying roller. At the left of the magazine is the hopper for the not yet banded cigars, while the feeder is behind the hopper. At the left of the hopper is the so-called gradually closing tunnel, which extends toward the rear of the machine. Beneath the magazine the separator presents a horizontal cigar band, plain face up, and the gum roller applies wet gum to one end of the band. The separator then releases to the conveyor the freshly gummed cigar band in horizontal position and extending transversely across the conveyor; and the conveyor carries this band edgewise to a position beneath the hopper, where it pauses for a moment. The feeder there places the cigar on the band, the cigar lying transversely across the band, and therefore lengthwise in the line of travel of the conveyor, and then the conveyor resumes its travel, carrying the band edgewise and the superposed cigar lengthwise into and through the tunnel. As the band and its cigar are carried through the tunnel, the latter gradually closes, thereby forcing the ends of the band up and around the cigar, and causing its two ends to overlap and stick together. Finally, the conveyor ejects the banded cigar lengthwise into the rear of the machine. The magazine is a cage made up of two upright end standards and four upright bars; all six uprights being separately adjustable on a horizontal plane which has a central opening or discharge mouth, large enough for the cigar bands to pass through freely, unless held back by suitable supporting means. These uprights which constitute the magazine are made separately movable to enable the magazine to accommodate batches of

9 F.(2d)—39

cigar bands of different shapes and sizes. The supporting means referred to are shown as the U-shaped pneumatic separator E and the two tongues O–O. Suitable mechanism reciprocates these tongues to and fro across the end of the discharge mouth, so that no band can pass through while the tongues are projecting, but only when they are withdrawn. Suitable mechanism reciprocates the separator into and away from the discharge mouth, so that no band can pass through while the separator is at the mouth, but only while the separator is receding. These mechanisms actuate the tongues and the separator in such correlated manner as to carry out the operations.

The principal features and functions of the magazine and separator in such operations are that the magazine is open at both ends, so that from time to time, without interrupting the operation of the machine, a new batch of bands may be placed therein; the bands pass from the front to the rear of the magazine by gravity. The separator supports the bands in the magazine at one stage, the tongues support the bands at another stage, and these alternate. There is a to and fro movement between the magazine and the separator. The separator and the conveyor have suction ports by which they grasp and move the cigar bands individually and without injuring them. The suction ports of the separator and the suction port of the conveyor are in simultaneous suction engagement with the same face of an individual band, and the suction engagement of the separator is balanced so as not to tilt the band or distort it from its predetermined alignment and the suction engagement by the conveyor is also a balanced engagement for the same purpose. The separator withdraws each band in a direction at right angles to the plane between the band and the next one, thereby avoiding the interlock of the embossed cigar band. The withdrawal of the cigar band by the separator is done without disturbing the alignment, and presents it in the same alignment to the action of the gumming roller, and the conveyor receives the band without affecting that alignment, and presents it to receive the cigar.

The appellee has a pneumatic separator. It has a band magazine, the main or upper portion of which is substantially vertical, while the lower portion curves around in the shape of the letter J, and faces the separator with which it is normally in contact. The separator is stationary, while the magazine is journalled near the top so as to swing

to and away from the separator. This is a relatively reciprocating movement as in the appellant's first patent. The appellee's pneumatic conveyor is swiveled in and projecting through a long horizontal journal bearing. It has two parallel suction arms which are in position for their respective suction ports to engage the two ends of the lowermost cigar band in the magazine, thus permitting the band in the appellee's machine, as in the appellant's first patent, to be in simultaneous engagement with the three suction ports of the separator and conveyor. There is a crank by which the two suction arms of the conveyor are swung down after receiving the band from the separator to present the band to the cigar, and are then swung back again straddle the separator, and thus the appellee's conveyor is reciprocating between the cigar and the separator. During the first movement from the separator to the cigar, the appellee's conveyor presents the band to the action of its moistener; the supply of bands already containing the dry adhesive. The standards and rods of appellee's magazine are movable for adjustment to accommodate cigars of various sizes.

The appellee is the owner of the patent to Raddatz, No. 1,333,340, granted March 9, 1920, on an application filed July 3, 1918. It is for a banding machine, and shows a horizontal magazine which has a spring-pressed follower, and shows a spring which normally forces the magazine toward the pneumatic separator and two horizontal suction arms for the pneumatic conveyor. These suction arms are adapted to swing down from their substantially horizontal position to a substantially vertical position above the cigar. There is a suction port on each of the suction arms and the suction port in the stationary separator which they straddle. The arrangement is such that the cigar band can be in simultaneous engagement with the separator and the arms of the conveyor in balanced engagement with each. The Raddatz separator is like the appellee's separator, in that it is stationary, while the magazine, like the appellee's, is a movable member, but in each there is the same relative reciprocating movement between the magazine and the separator as in appellant's first patent. The appellee's machine is provided with a reciprocating tongue 40 between the two reciprocating tongues 44–44, whereas Raddatz has no such fingers and no such reciprocating member in front of the magazine other than the two arms of the conveyor.

It thus appears that, in building the ap-

pellee's machine under the Raddatz patent, they reverted to the appellant's reciprocating fingers which Raddatz omitted. The appellee has abandoned the horizontal position of the Raddatz magazine, and reverted to a magazine whose main portion is vertical, and thus they eliminated the follower and utilize gravity to fed the bands. Like the appellant's, the suction from the appellee's separator slightly flexes the engaged portion of the lowermost band, and these fingers or tongues 40, 44–44, then enter the space produced by the flexing. The mechanisms bring, first, the appellee's separator, and shortly thereafter the appellee's conveyor arm, into engagement with the lowermost band in the magazine. At the outset, the separator supports the bands, then its suction flexes the lowermost band, then the tongues 44–44 and the tongue 40 simultaneously enter the space produced by said flexing—the tongues then supporting the second band, and the rest of the pile now no longer supported by the separator, and in the meanwhile the magazine and separator are separating from each other and the foremost band is being withdrawn for delivery to the conveyor. Also meanwhile the tongues have been withdrawn from contact with the face of the lowermost remaining band and their place afterwards taken by the next engagement of the separator for withdrawing the then lowermost band.

Like the appellant, the appellee has a magazine containing the cigar bands and a pneumatic separator and a pneumatic conveyor. Its separator alternates with its fingers or tongues in supporting the pile of bands. It has a relative to and fro movement between the magazine and the separator; both have suction ports for grasping and moving the individual bands. During one stage of the operation, an individual cigar band in appellee's machine is in simultaneous engagement with the separator and conveyor; the engagement of each being balanced. Like the appellant's, the separator withdraws each band individually in a direction at right angles to the plane between it and the next band, thus avoiding the interlocking between the embossed bands. It receives the properly aligned band from the separator by its conveyor, presents it to the moistening roller, and delivers it to the band-applying mechanism. The appellee's device performs the precise function as the appellant's, by substantially the same means; that is, the continuous application of successive cigar bands to successive cigars. The shifting from the horizontal to the vertical without change of func-

tion cannot avoid infringement. Hoyt v. Horne, 145 U. S. 309, 12 S. Ct. 922, 36 L. Ed. 713. Nor is infringement avoided by such exchange from one to the other of two members which are to approach and recede —of the actual movement required for such relative approach and receding. Anchor Cap & Closure v. Pritchard (D. C.) 232 F. 156.

Claim 22 provides for two elements, first, the vertically disposed U-shaped suction device and a movable means for supporting the bands above said device. It is arranged so that, when the suction device is raised, it engages the lowermost band, and, when lowered, withdraws it from the pile, leaving all the other bands in the said supporting means. As has been pointed out, the appellee's machine has this combination of magazine and separator. For it has a suction device, separator of such shape as to permit it to have balanced engagement with the face of the cigar band. While another suction device is simultaneously in balanced engagement with the same face of the band, the magazine and separator have relative approach and separation for withdrawing the bands individually. We think that this claim is valid and infringed. There is no prior patent which anticipates this claim.

Claim 88 provides for a separator which is adapted to engage the lowermost band of a pile of bands to support them and to form a space between the lowermost band and the next one above, with reciprocating tongues as means adapted to pass into said space so as to support the pile of bands on withdrawing said support. The appellee's separator is adapted to engage the lowermost band of the pile bands, and once in every cycle of its machine it does engage the lowermost band. At one stage of every cycle its separator supports the pile of bands, and for every band about to be removed, the separator forms, by its suction, a space between the lowermost band and the next one above. Its fingers 44–44 are adapted to pass into the space and do so once in every cycle of its machine. After they have entered the space and the support temporarily afforded by the separator has been withdrawn, the fingers 44–44 do support the pile of bands and on withdrawing the support afforded by the separator. We think the prior patents do not establish an anticipation of this patent in cigar banding art, and this claim is valid and infringed.

Claim 97 provides for reciprocating tongues which at times support the pile and means for reciprocating said tongues, so that they support said piles when not supported by pneumatic means, and cause said tongues to enter between said lowest label and the pile while the lowest label is flexed. We do not think the appellant has any equivalent for the reciprocating tongues referred to in this claim, and therefore find that this claim is not infringed.

[4] As an anticipation of claim 5, the appellee refers to patents to Britton and Briggs. Britton applies an inner wrapper and also an outer wrapper around a rectangular or cube-shaped article which is rigid. He does this by producing successive foldings of paper. His organized machine differs from the appellant's machine. The several elements of the claim herein sued on are to be read as calling for devices suitable for performing the functions which the patent attributes to them respectively. There is nothing in the Britton patent that suggests a device suitable for the purposes disclosed in the patent in suit. A machine was made under the Briggs patent which proved unsuccessful. There the band-applying mechanism was based upon the principle of rolling the cigars, and the conveyor had mechanical grippers for transferring the cigar bands. Appellant proved that, in moving the bands, two or more were moved at a time. Briggs contemplated transferring the individual cigar bands from the separator onto the location where they were to be applied to the cigars, and, in his conveyor for transferring the bands to the cigars, he undertook to use a mechanical gripping device. It proved unsuccessful in banding boxed cigars, which is the improvement obtained by the use of the second patent here in suit. The argument that claim 5 was anticipated by the first patent in suit is also without force. The moistener and its location to function with the band on the conveyor differentiates the second patent from the first. The second patent is also improved by the reciprocating conveyor having an immediate return and not passing through the tunnel and also by the fact that it is a suction device. The moistener, reciprocating conveyor, and the band-applying means were found in the appellee's combination in the construction of its device, and it is differentiated from the first patent in having its band-applying means distinct from its conveyor. These elements are found in appellee's devices.

[5] Nor is the appellant limited or estopped from reading claim 5 as calling for suction means on the conveyor. As originally pre-

sented to the Patent Office, claim 5 recited an element as "suction means on said conveyor for receiving the band from the suction means and holding the same on the conveyor." The claim was allowed in its original form without objection, and, while the claim stood allowed, the applicant's attorney voluntarily canceled the word "suction," at the same time canceling the words "first named," and changed "removing" to "receiving." As changed, claim 5 assumed its present form. The amendment broadened the claim, but it was not for the purpose of differentiating the claim from the prior art cited against it. There can be no estoppel seeking to interpret the claim in the narrower form originally presented. Bundy v. Detroit, 94 F. 524, 36 C. C. A. 375; Bird v. Sears-Roebuck (C. C. A.) 299 F. 574.

We conclude that claims 22 and 88 of the first patent and claim 5 of the second patent are valid and infringed, and that the decree below should have been entered for the appellant.

Decree reversed.

HAND, Circuit Judge (dissenting). I cannot see that claims 22 and 88 of the first patent are any more infringed than claim 97, which my brothers find has not been. It does not seem to me desirable to state my reasons at length, beyond saying that for infringement it seems to me necessary to find that the reciprocating fingers 44–44 support the stack of bands at some part of the cycle. The only proof that I can find in the record is that they do not. I see no reason to reject Bentley's testimony that their only function is to insure against pulling away more than one band at a time. To me it seems plain that the analogue of the reciprocating fingers 0–0 of the patent are the defendant's rigid ledges, 64. There are indeed other divergences between the claim and the defendant's supporting and withdrawing mechanism, but this alone seems to me fatal to the suit. In claim 22, I cannot, therefore, find any "movable means for supporting bands above said device"; i. e., the sucker. In claim 88 I can find no "support adapted to engage the lowermost band of a pile of bands to support the latter and to form a space between the lowermost band and the next one above."

The defendant's machine has its provenience from Boyd, 547, 763, rather than from the patent in suit; or, if not, at least its operation is more like Boyd's. Dealing, as we are, with a limited detail of a very complicated mechanism, I fail to see what the patent in this regard may take from being the first practicable cigar-banding machine. In the most important detail of wrapping the cigars, it is toto caclo different.

The case on the second patent is more doubtful, and, if it stood alone, I might not have thought it worth while to record my dissent. However, I cannot agree that in claim 5 there is any patentable invention over the first patent. Again success seems to me substantially to depend on the band-applying means, which every one agrees is quite different from that used by the defendant. Claim 5 does not involve that, but would apply to any machine containing any band-applying mechanism; that is, unless limited for purposes of validity, which the plaintiff does not want. The claim is for the most abstract conception of the invention. Of the prescribed elements, the first patent had (1) a band container, (2) suction means for withdrawing the bands, (3) means on the conveyor for receiving the band from the suction means, and holding it on the conveyor, (4) moistening means, and (5) a band-applying mechanism. What it did not have was (6) a reciprocating conveyor, which (7) transferred the band to the moistening means and thence to the band-applying means. The conveyor in the first patent was a flexible belt, which, instead of reciprocating, was carried upon a chain and sprocket and traveled in an ellipse.

If the claim is broadly valid, it must be because the reciprocation of the conveyor as a mere idea is novel, for the mechanism of reciprocation is altogether different from that of the defendant's. I do not believe that that is a patentable novelty. There remains only the position of the moistener. In the first patent, the moistening is done while the band is upon the sucker, the mechanism is wholly different from that of the second patent. But the claim must again depend upon the mere idea of moistening while the band is on the conveyor, because in this too the defendant's mechanism is quite different. I do not think that, as a mere idea, this is patentable either.

To succeed, the plaintiff must maintain that the first person who made a cigar-banding apparatus can control all others who make any such apparatus in which the sequence of steps is the same. I do not believe that there is any invention in that mere sequence. But, if there is, the sequence is disclosed in Britton, in which a sucker removes one label at a time, the jaws of a reciprocating conveyor seize it, and it is then gummed

and passes to a wrapping machine. In Britton the band is not held, it is true, by suction means upon the conveyor, but the plaintiff for its own purposes eliminated that element from the claim, and indeed it is the arm 40 which holds the band to the defendant's sucker after the first withdrawal.