## HASKELL GOLF BALL CO. v. PERFECT GOLF BALL CO.

### (Circuit Court, S. D. New York. February 3, 1906.)

PATENTS—INFRINGEMENT—GOLF BALLS.

In the Work & Haskell patent, No. 622,834, for a golf ball comprising a core composed wholly or in part of rubber thread wound under tension and an inclosing shell of gutta-percha, the word "thread" is not limited to a compound cord made by twisting together two or more strands, but includes any strip of rubber of whatever shape, and the patent is infringed by a ball made as described therein with a core made by winding a rubber band under tension.

In Equity. Bill for alleged infringement of golf ball patent No. 622,834, dated April 11, 1899, and granted to Bertram G. Work and Coburn Haskell, and thereafter assigned to the complainant, Haskell Golf Ball Company.

Charles Neave (Edmund Wetmore, of counsel), for complainant.
Warfield & Duell, for defendant.

RAY, District Judge. As the defendant admits, or at least does not question, the validity of the patent in suit, the only question here involved is that of infringement. The defendant insists that in view of the file wrapper and contents, which are in evidence, the complainant's patent is so limited that the defendant is at liberty to produce and sell a golf ball in every respect like that of the complainant, both in material, form of construction, and size, except that defendant substitutes what it calls an exceedingly thin and highly elastic rubber band in place of the rubber thread mentioned in the specifications and claims of the patent in suit. The contention seems to be that, in view of the file wrapper and contents, the complainant is limited in making the core of its ball to "a rubber thread" and is not entitled to the doctrine of equivalents, and that as the defendant in making its ball uses a very thin rubber band about one inch in width when not stretched substantially to its limit, and which is about two or three tenths of an inch in width, and much thinner when stretched substantially to its limit, it does not infringe.

It is not substantially disputed that this thin rubber band, so called by the defendant, is the equivalent in all material respects of a rubber thread. In both cases the mode of constructing the core of the ball is to wind the thread in the one case and the band in the other, stretched substantially to its utmost tension, upon itself or upon some small hard substance forming a center, until a ball of the required size is obtained. In either case, and whether we use the thread or the band, we have a hard ball, composed entirely of rubber except when the center mentioned is used, and this ball of rubber, called "the core," is then inclosed in a covering of gutta-percha called in the specifications of the patent "a gutta-percha shell of adequate thickness." In the claims this shell is termed "a gutta-percha inclosing shell for the core," and in claim 2 "an inclosing shell of gutta-percha." In both claims it is specified that this inclosing shell of gutta-percha shall be "of such thickness as to give it the required rigidity."

The patent in suit contains two claims, both of which are claimed to be infringed, and these claims read as follows:

"(1) A golf ball, comprising a core composed wholly or in part of rubber thread wound under high tension, and a gutta-percha inclosing shell for the core, of such thickness as to give it the required rigidity, substantially as described.

"(2) A golf ball, comprising a central core section of relatively nonelastic material, rubber thread wound thereon under tension, and an inclosing shell of gutta percha, of such thickness as to give it the required rigidity, substantially as described."

As originally presented at the Patent Office the patent contained five claims, as follows:

"(1) A ball, comprising an elastic core and a gutta-percha shell inclosing said core, substantially as and for the purpose set forth.

"(2) A ball comprising a core formed with a rubber thread wound into spherical form under tension approaching the elastic limit, and a shell of relatively hard, inelastic material inclosing said core, substantially as and for the purpose set forth.

"(3) A ball comprising a core composed wholly or in part of rubber thread wound under high tension, and a gutta-percha shell inclosing said core, substantially as and for the purpose set forth.

"(4) A ball comprising a central core section, rubber thread wound thereon under tension, and an inclosing shell of relatively hard, inelastic material, substantially as and for the purpose set forth.

"(5) A ball comprising a central core section of relatively nonelastic material, rubber thread wound thereon under tension, and an inclosing shell of gutta-percha, substantially as and for the purpose set forth."

Eventually all of these claims were dropped or abandoned, excepting claims 3 and 5, which claims were amended and allowed in the form and reading as above stated.

It will be noted that claim 3 read "a ball" and that the claim as allowed reads "a golf ball," and that claim 3 read "and a gutta-percha shell inclosing said core, substantially as and for the purpose set forth" while claim 1, as allowed, reads "and a gutta-percha inclosing shell for the core of such thickness as to give it the required rigidity, substantially as described." The changes relate to the shell. It will also be noted that claim 5, now claim 2, read "a ball," and now reads "a golf ball," and that claim 5, now claim 2, ended with the words "substantially as and for the purpose set forth" while now it reads "of such thickness as to give it the required rigidity, substantially as described," the latter words quoted being substituted for the former quoted words. This change relates to the shell. In reading the file wrapper I do not find that the words "rubber thread" were in any way defined or limited, nor do I find that the meaning of these words was at any time brought in question.

In the specifications of the patent, as finally allowed, we find the following:

"Our object is to provide a ball for the above purposes 'the game of golf, though it may be used in other games where a ball of similar properties is desired,' which shall possess the essential qualities of lightness and durability and which shall also have the property of being comparatively nonresilient under the moderate impacts incident to its use, but highly resilient under the stronger impacts. We accomplish the objects sought by making the main body of the core of rubber thread wound under tension into spherical form

and providing the same with an adequately thick covering of gutta-percha or one of its substitutes, such as balata gum, the covering possessing the attributes, comparatively speaking, of inelasticity, toughness, hardness, and lightness. * * * The preferred manner of making the ball is by winding a rubber thread upon itself, under a tension approximating the elastic limit, to produce a spherical core A and covering this core with a gutta-percha shell of adequate thickness. * * * The shell thus formed to be effective must be of such thickness as to remain comparatively rigid under the moderate impacts to which the ball is subjected, as in the case of light blows with the golf club or on striking the earth, but to yield under the more violent impacts, as in 'driving,' whereby the force is brought to bear upon the elastic core. * * * It is an essential feature of the construction that the core shall closely fill the interior of the shell and desirable that the core be confined therein under some compression. A core produced by winding a rubber thread under high tension into spherical form possesses a remarkably high degree of elasticity coupled with high rigidity in the sense of resistance to deformation, which imparts to the ball the property of very great resilience. As the result of the described construction, therefore, our golf ball has exceptionally high driving qualities owing to the fact that the impact of a golf club is capable of distorting it through the shell by reason of the adequate flexibility of the latter and little tendency to bound by reason of the fact that little, if any, distortion takes place upon contact with the ground. The highest resistance to change in form, therefore, is attained when the thread is at all parts of the ball under a tension close to the elastic limit, tending to maintain a perfect sphere, whereby the slightest distortion is resisted by approximately the full strength of the material, and the effect is enhanced by the close environment of the elastic body within the comparatively unyielding shell. In the appended claims the term 'elastic core' is meant to cover that portion of the ball included within the outer shell and composed wholly or mainly of rubber thread, while the term 'gutta-percha shell' is intended as limiting the claims wherein it is employed to gutta-percha or one of its substitutes, such as the one mentioned above."

We do not find in these specifications any description of the rubber thread to be used in the construction of these golf balls. We are not limited to a thread of any particular shape or size. It is not suggested that this rubber thread must be round or square; that it may not be wider than it is thick; that it must be a twisted strand of rubber or composed of two or more strands twisted or spun together. In the Century Dictionary we find that thread is "a twisted filament of a fibrous substance, as cotton, flax, silk or wool, spun out to considerable length. In a specific sense, thread is a compound cord consisting of two or more yarns firmly united together by twisting." It is, I think, evident that the words "rubber thread" are not used in this sense in this patent. The Century Dictionary gives the secondary meaning as "A fine filament or thread-like body of any kind; as, a thread of spun glass; a thread of corn silk." A further definition is "In mining, a thin seam, vein, or fissure filled with ore." A further definition is "A very slender line applied on a surface." We also find that "A thin strip of gilded paper often used in Oriental brocaded stuffs," is called a thread. The word "filament" may mean a separate fiber or fibril of any vegetable or animal tissue or product, natural or artificial, or of a fibrous mineral; as a filament of silk, wool, cobweb, or asbestos; a cortical or muscular filament.

While ordinarily we understand by the word "thread" some twisted filament of a fibrous substance, still this would not apply when speaking of a thread of glass or necessarily of a thread of leather. Would

it be incorrect to speak of something, like a horse blanket or heavy fur overcoat, as being sewn together with threads of leather, when such threads were formed of long small strips of leather cut substantially square? Looking to the definition of the word "strand" we find that a single thread is a strand; a string is a strand, and one of a number of flexible things, as grasses, strips of bark or hair when used to be twisted or woven together is called a "strand." It must be conceded that within the strict definition of the word "thread" the defendant does not use a thread of rubber in making the core of its golf ball. It is more nearly a band of rubber, and still it is not in the strict sense a band or intended to be used as a band. I think, however, that within the meaning that should be given to the word "thread" in the patent in suit the defendant's strip of rubber is a thread within the broad definitions already referred to. It serves every purpose of the thread there mentioned, and is its equivalent in every respect. It answers the same purpose and performs the same function. In winding it upon itself to form the core it may be that it is difficult, if not impossible, to give the same tension to its outer edges that we give to its center, but this fact in no way impairs the completed structure.

Again, I find nothing in the patent or in the file wrapper that limits the complainant in the construction of his golf ball to the use of a rubber thread in the strict or narrow sense. We are to give a reasonable and a common sense construction to the language of this patent. If, however, there was anything in the action of the Patent Office that rejected a claim for the core of a ball wound with such light and thin bands of rubber as we find in defendant's structure, and the patentee abandoned such claim and substituted something different in the claim as allowed or accepted the claim as allowed with the word "thread" confined to its narrow meaning as distinguished from such a strand or band as is used by the defendant, then we are compelled to give to the claim of the patent that narrow and restricted meaning, and the defendant does not infringe. But I fail to find in the contents of the file wrapper any suggestion that any claim of the patent was rejected or modified because of any contention or difference in opinion as to the meaning of the word "thread" as used in the claims of the patent or the specifications thereof when originally filed or as subsequently modified. Nor do I find that any claim of the patent was rejected or modified because it included a core wound with or made of rubber bands of the character used by the defendant. It is, of course, true, that a patentee may limit himself by the use of language to a very narrow claim when his invention would warrant a broad claim. One of the essential elements of claim 1 of the patent in suit is "a core composed wholly or in part of rubber thread wound under high tension" and in claim 2 of "a central core section of relatively nonelastic material, rubber thread, wound thereon under tension."

So far as the elements relating to the core of the original claims 3 and 5 are concerned no change was made as finally allowed except to limit the ball to a golf ball. The composition of the central core section of claim 2 in the patent as allowed and the composition of the

core mentioned in claim 1 of the patent as allowed are not changed. Each claim is for a combination and the combination is that of a core and a shell in a golf ball. The core is a ball of itself, but it is not to be used as a ball outside of the inclosing shell, and it is not constructed for use outside of the shell. September 1, 1898, the Patent Office rejected claim 1 as originally made on the Giblin patent, No. 165,994, and claim 2 as originally made was rejected on Giblin in view of Taylor No. 262,257. Claims 3, 4, and 5 as originally made, were rejected on the above-mentioned references taken with Shibe No. 272,984. The Patent Office said:

"In these references, the structure of Taylor is considered the equivalent . of the core in applicant's device while the vulcanized covering of Giblin is equivalent to his gutta-percha shell, as their function is identical; and there would be no invention in substituting the parts of these balls to form applicant's structure."

Neither the Giblin, nor the Taylor, nor the Shibe patent is in evidence or before this court, and it is impossible for it to consider them or determine what the elements of those patents were. It must be presumed that the defendant would have put them in evidence if they contain or show anything that would tend to limit the complainant's claims. These patents were within reach of the defendant, and it is fair to infer that neither of them contains or would show anything tending to limit the complainant's claims in the patent as granted. The file wrapper contains a communication from the applicant's attorneys, dated September 14, 1898, in which they describe the Giblin patent, and for the purposes of this case this must be taken as correct. So taken, that patent contains nothing to limit the construction that is given to the patent in suit. In the same communication complainant's attorneys say, speaking of the other references above mentioned:

"None of the references discloses a core produced by winding a rubber thread upon itself under a tension approaching the elastic. limit. We believe that it detracts in no wise from the merit of this feature of applicant's invention that balls. have been formed from cotton or woolen yarn wound tightly on itself. It is possible after the invention is made to study out the reasons for the improved result; but it might be centuries before any one would by unaided abstract reason arrive at a conclusion that a ball formed from a delicate, easily stretched rubber thread would, when completed, produce an exceedingly elastic distortion-resisting ball, possessing the qualities set forth. It is not seen that the Taylor patent has any bearing on the present case, unless it is to show that where a person produces a ball out of materials not before used in the art, or by combining materials already used in a manner to produce great improvement, he is entitled to his patent. * * * In the present case no one has used the combinations set forth in the claims."

Inasmuch as the patents referred to by the examiner are not put in evidence, this court will assume that these statements as to the composition and elements thereof are correct. These statements were not disputed by the examiner.

September 30, 1898, the examiner wrote:

"Balls made of rubber thread, wound under high tension are notoriously common in this office. To substitute one of these balls in the Giblin patent for the parts marked A and B, would be a complete answer to each of applicant's claims. The claims are again rejected."

In reply to this the claimant's attorneys wrote:

"We respectfully request, before further argument or amendment, that a reference showing a core composed of a rubber thread wound under high tension be added to the record in support of the examiner's statement."

This communication was dated October 25, 1898. November 15, 1898, the examiner said, changing his ground entirely:

"The claims are rejected on the patent to Castle, 281,238, July 17, 1883 (Balls & Bats). The word 'Office' in the second line of the last official letter should be 'city.' The examiner has personal knowledge of the use of balls made of rubber bands, under high tension for the last 15 years, and to substitute such a ball in Castle's patent would not involve invention."

There is no affidavit made by this examiner, and he changes the basis of his rejection from the Giblin, Taylor, and Shibe patents to the Castle patent, which was not put in evidence, and is not before this Court. It may be presumed that the Castle patent would have been put in evidence did it show anything limiting the construction to be given to the language of claims 1 and 2 of the patent in suit describing the core. September 30th, the examiner said that balls made of rubber thread wound under high tension were notoriously common in the Patent Office. November 15th, he abandons this claim entirely, and substitutes "city" for "office" and says that he has knowledge of the use of balls made of rubber bands under high tension. The examiner undoubtedly referred to a fact that every ball player is familiar with, viz.: That in playing the game of baseball these playing balls were frequently made of rubber bands wound upon themselves and covered with a thin layer of leather. This court does not think that this mere statement of this examiner, unaccompanied by any affidavit, should limit the construction to be given to the claims of the patent in suit, which are not for a playing ball, but for the core of a golf ball; something entirely different. But even this contention was seemingly abandoned, for without further correspondence so far as appears, claims 1 and 2 of the patent in suit, being claims 3 and 5 of substituted claims submitted under date of August 9, 1898, were allowed, and the commissioner said under date of December 29th:

"Please find below a communication from the examiner in charge of your application for Ball, filed August 9, 1898."

That communication of the examiner reads:

"Claims 1, 2, 4, and 6 are rejected on Giblin, July 27, 1875, 165,994, and Castle, July 17, 1883, 281,238. See, also, British patent to Wolfgang, May 10, 1869, No. 1,424 (Balls & Bats). Claims 3 and 5 are allowed. In view of the fact that balls composed of rubber bands wound under high tension are common; and balls composed of various kind of fillings and covered with gutta-percha are also common, it is held that the invention, if any, is fully covered by the allowed claims and embraces all the applicant is entitled to. The description should be revised to harmonize with the above views."

In view of this rejection of claims 1, 2, 4 and 6, and the allowance of claims 3 and 5, it becomes important to turn again to the claims and ascertain what, in fact, was rejected and what was allowed and also what substitutions and limitations, if any, had been made.

Under date of August 9, 1898, the claimant had substituted specifi-

cations and claims, and I now refer to the substituted claims, claim 6 having been added. These amended or substituted claims were as follows:

| | |
|---|---|
| Canceled Jan. 30, 1899. | "(1) A golf ball, comprising in combination an elastic core and a close fitting inclosing shell for the core of relatively hard material, having such thickness as to give it the requisite degree of rigidity, substantially as described.<br><br>"(2) A golf ball, comprising a core formed with a rubber thread wound into spherical form under tension approximating the elastic limit, and an inclosing shell therefor of relatively hard material of such thickness as to give it the required rigidity, substantially as described. |
| | "(3) A golf ball, comprising a core composed wholly or in part of rubber thread wound under high tension, and a gutta-percha inclosing shell for the core, of such thickness as to give it the required rigidity, substantially as described. |
| Canceled Jan. 30, 1899. | "(4) A golf ball, comprising a central core section, rubber thread wound thereon under tension, and an inclosing shell or relatively hard material, of such thickness as to give it the required rigidity, substantially as described. |
| | "(5) A golf ball, comprising a central core section of relatively nonelastic material, rubber thread wound thereon under tension, and an inclosing shell of gutta-percha, of such thickness as to give it the required rigidity, substantially as described. |
| Canceled Jan. 30, 1899. | "(6) A golf ball having a core wholly or in part of elastic material and an inclosing shell therefor of relatively hard material having such thickness as to render it approximately inflexible under the moderate impacts incident to its use but sufficiently flexible under the stronger impacts to bring the elastic property of the core into action, substantially as described." |

Claim 1 rejected was for a golf ball comprising in combination "an elastic core" and a shell which it is not necessary to describe. It is evident that any ball having a core composed of elastic material would be covered by this claim, and a core composed of any elastic material is therefore excluded. Claim 2 rejected included a core formed with a rubber thread wound into spherical form under tension approximating the elastic limit and also the shell. The shell under this claim might be composed of any relatively hard material. Claim 3 allowed as claim 1 in the patent includes a core composed either wholly or in part of rubber thread wound under high tension and a gutta-percha inclosing shell for the core. As claim 3 was allowed with a gutta-percha inclosing shell substituted for a shell of relatively hard material which would include any hard material, it is evident that the patent is limited to a gutta-percha shell, and it is also evident that as rubber thread wound under high tension is retained and takes the place of "rubber thread wound into spherical form under tension approximating the elastic limit" as stated in claim 2 rejected, that it was not intended to reject claim 2 because of the language relating to rubber thread or to the core, but because of the description of the inclosing shell. The core must necessarily be of a spherical form. The words "rubber thread" are used in both claim 3 allowed and claim 2 rejected, and

this court is unable to discern any difference between rubber thread wound under tension approximating the elastic limit, and rubber thread wound under high tension, except that the tension in the one case might be greater than in the other.  Claim 4 rejected contained a central core section as element 1; rubber thread wound thereon under tension, element 2; and the inclosing shell.  The inclosing shell was of relatively hard material, any hard material; and hence this claim was rejected.  The core section was to all intents and purposes the same as the core section of claim 3 allowed, with the single exception that claim 3 allowed has the words "high tension" while claim 4 rejected had the word "tension" alone.  In claim 3 allowed the core is composed either wholly or in part of rubber thread, and hence it may have what was described in claim 4 rejected, viz., a central core section with rubber thread wound thereon.  Claim 5 allowed has a core section of relatively nonelastic material, and rubber thread wound thereon under tension and an inclosing shell of gutta-percha.  The central core section has the rubber thread wound under tension but not necessarily high tension.  Claim 6 was rejected because the core was composed wholly or in part of any elastic material and because the inclosing shell was not confined to gutta-percha.

It seems clear that the Patent office intended to reject a claim for a golf ball having in the combination any other than the gutta percha inclosing shell and one having in the combination a core composed of any elastic material.  The Patent Office did not intend to reject and did not reject a claim for a golf ball comprising in combination a core composed wholly or in part of rubber thread or its equivalent, if of rubber and capable of being wound under tension either upon itself or upon some central core formed of some relatively non elastic material, and a gutta-percha inclosing shell of such thickness as to give it the required rigidity described in the specifications.  Nowhere do we find any limitation placed upon rubber thread except that it is to be composed of rubber and capable of being wound either upon itself or upon the central core piece referred to.

If the rubber strip or band used by the defendant is not the equivalent of and to be regarded as the rubber thread referred to and included within the meaning of the claims of the patent in suit, then a very thin and very narrow strip of rubber would not be and a strip of rubber one one-thousandth part of an inch in thickness and one one-hundredth part of an inch in width would not be regarded as a rubber thread.  Such a strip of rubber would be a rubber band, and not a rubber thread, because of much greater width than thickness, because not "a twisted filament of a fibrous substance spun out to considerable length," because not a compound cord consisting of two or more strands of rubber united together by twisting, because not round.

In Bundy Manufacturing Company v. Detroit Time Register Company, 94 Fed. 524, 36 C. C. A. 375, the Circuit Court of Appeals said:

"To be estopped by the action of the Patent Office, a patentee must be shown to have surrendered something which he now claims in order to obtain that which was allowed."

In the case at bar can it justly be said that the patentee surrendered every size and form of light, thin rubber band in order to obtain the allowance of rubber thread? The difference, if any, is in size and form (width merely) and not in utility, function or result. The court has carefully examined the authorities cited by the defendant. The defendant made no showing of the prior art except such as we find in the file wrapper. So far as the meaning to be given to the words "rubber thread" is concerned this court finds no limitation either in the specifications or the claims or the action of the Patent Office.

Infringement is made out, and as the validity of the patent is conceded, there will be a decree for the complainant that the patent is valid; that the defendant infringes, and for an injunction and an accounting.