HASKELL GOLF BALL CO. v. SPORTING GOODS SALES CO.

(District Court, D. Massachusetts. January 13, 1914.)

No. 366.

PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—GOLF BALL.
    The Work and Haskell patent No. 622,834 for a golf ball, comprising a core composed wholly or in part of rubber thread wound under high tension and a gutta-percha inclosing shell, was not anticipated, and discloses patentable invention; also *held* infringed.

In Equity. Suit by the Haskell Golf Ball Company against the Sporting Goods Sales Company. On final hearing. Decree for complainant.

Fish, Richardson, Herrick & Neave, of Boston, Mass., and Charles Neave, of New York City, for complainant.
Redding & Greeley, of New York City, and Charles F. Perkins, of Boston, Mass., for defendant.

DODGE, Circuit Judge. The plaintiff charges the defendant with infringing United States patent No. 622,834, issued April 11, 1899, to Work and Haskell, for an improvement in balls; which patent has belonged to the plaintiff since 1901.

The patentees begin their specification by stating that their improved ball is for use more especially in the game of golf, though it may be used in other games where a ball of similar qualities is desired. No other game requiring a ball of similar qualities has been referred to, the claims of the patent speak only of "a golf ball," and there is no suggestion that the alleged infringing ball is anything but a golf ball. No occasion arises, therefore, for considering the patent in any other aspect.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The claims are as follows. The defendant is charged with infringing both.

"1. A golf ball, comprising a core composed wholly or in part of rubber thread wound under high tension, and a gutta-percha inclosing shell for the core, of such thickness as to give it the required rigidity, substantially as described.

"2. A golf ball, comprising a central core section of relatively nonelastic material, rubber thread wound thereon under tension, and an inclosing shell of gutta-percha, of such thickness as to give it the required rigidity, substantially as described."

1. The defendant, a corporation organized in May, 1912, has sold golf balls in Massachusetts of a kind known as "Zodiac" golf balls. Some of them have been produced, and as to their actual material and construction there is no question requiring discussion. They have a central core section, and I see no reason to doubt that this is of "relatively nonelastic material." Whether it is or not, the. core is composed of rubber thread wound upon it, not only "under tension" but, as I find, "under high tension." I must regard the defendant's core as the core of the patent, particularly in view of Haskell Golf Ball Co. v. Perfect Golf Ball Co. (C. C.) 143 Fed. 128, the only reported decision in this country involving this patent.

In the defendant's golf ball the above core is inclosed in a shell or covering. Whether or not this ought to be regarded as differing materially from the "shell" of the patent is in dispute, and is the only question which need be considered upon the issue of infringement, if the patent be valid.

The shell of the patent, according to the claims, is to be of gutta-percha, which term is to include, as the specification expressly states, any of the substitutes of gutta-percha such as balata gum.

Besides being made of this material, the shell is to be, relatively to the core inclosed, "of such thickness as to give it the required rigidity."

The required rigidity is that described in the specification. It is to be a rigidity sufficient to offer comparative. resistance to the lighter, but insufficient to prevent yielding under the more violent of the various impacts, greatly differing in force, adaptation to receive which is required in the golf ball by the nature of the game. The shell of the patent is to be "comparatively unyielding" as regards the elastic core it incloses.

The defendant's material is a composition containing 82 per cent. of balata gum and 18 per cent. of para rubber. I find no reason to doubt, on the evidence, that this is a "substitute" of gutta-percha, within the meaning of the patent.

The rigidity of the defendant's shell is claimed to differ widely from the "required rigidity" of the patent. It appears that, in golf balls made under license from the plaintiff, the thickness of the inclosing shell has been not less than one-sixteenth of an inch, and that this has been considered by the makers the least thickness consistent with durability. It appears that in the defendant's alleged infringing golf balls the thickness of the inclosing shell is somewhat less. It is claimed to be, in them, only one thirty-second of an inch. It is also

claimed that the sole object of the defendant's inclosing shell is to protect the core from injury, and that it does not effect any diminution of that elasticity which the core supplies to the ball because rubber wound. The evidence bearing upon these claims, in connection with an examination of the defendant's shell as produced in court, leaves me unable to regard it as serving only to cover and protect the core, and unable also to believe that there is any substantial difference between it and the shell of the patent, either in the nature or composition of the two, or in the effect they produce as component parts of a golf ball.

The shell of the patent is to be a covering "possessing the attributes, comparatively speaking, of inelasticity, toughness, hardness, and lightness." The patent elsewhere refers to it, as has been said, as "comparatively unyielding." In these respects it must differ from such elastic, soft, flexible, or yielding coverings as might serve the mere purpose of protecting the core. Because it is so to differ from any such covering, it is properly described as a "shell." The defendant's shell possesses the same attributes, and must necessarily possess them, because they are inherent in the material of which it is made. It is distinguishable in the same respects from a mere protecting skin or covering. It is as properly to be called a "shell" as the shell described in the patent, and for the same reasons. Whether or not it has the effect of muffling or diminishing the elasticity of the rubber-wound core within it, so as to secure the results which are to be secured, according to the patent, by the "required rigidity" of the shell therein described, is a question upon which the evidence is in conflict. My conclusion is that if the shell of the patent has the muffling effect referred to, the defendant's shell has it also, that the only difference between them in this respect is at most one of degree only, and that there is no difference in degree such as to be material for the purposes of this case. I must therefore hold the defendant's golf ball to be an infringement; the validity of the patent being assumed.

2. Against the validity of the patent the contentions are made that the invention described lacks patentability, and that it was anticipated. The only reported decision in this country upon the patent has already been cited. In it the question of infringement is the only one determined. Haskell, etc., Co. v. Perfect, etc., Co., 143 Fed. 128, decided in the New York Southern District in 1906.

On the question of patentability, besides the presumption arising from the granting of the patent, there are, in favor of its validity, the following facts which appear from the evidence. By the end of 1902, three years after golf balls made under the patent had first entered the market, they had practically superseded the solid gutta-percha ball, generally used in the game in 1899 and previously, and had become the only golf balls in general use. Golf balls made under the patent have been sold in very large numbers since 1899; the number sold increasing rapidly from year to year. Three alleged infringers have, since 1899, submitted to decrees against them, against one there has been a decree by default, still another obtained discontinuance

of the suit against him by ceasing to manufacture the golf balls complained of; and the defendant in the case above cited did not, as has been stated, question the validity of the patent, so that it may fairly be said that acquiescence in the validity of the patent has become general.

Balls composed of rubber thread or strips, wound under tension, either with or without a central core, and either with or without covers of some kind, were old and well known in 1899. This appears without dispute, but it also appears that all such balls were intended for use and used in other games, none of them in the game of golf. At that time the solid gutta-percha ball may be said to have been the only golf ball known in the market.

Balls having covers composed wholly or principally of gutta-percha were also old and well known in 1899. This also appears without dispute. But none of the balls of this description to which the evidence refers appear to have been either used or intended for use in the game of golf. They were, generally speaking, handballs, baseballs, or poloballs, and there is nothing to show that in any of them a gutta-percha covering was used which had or was expected to have those attributes, relatively to any of the various cores which they were used to inclose, called for, as has above appeared, by the patent in suit.

The defendant says that the patent does no more than combine an old and well-known ball with an old and well-known cover for a ball, and that its combination of these two old and well-known elements produces no new mode of operation and is unpatentable. This is well founded if it be true, as the defendant contends, that nothing more is in fact accomplished by the patented combination than to produce a "livelier" or more resilient (though less durable) ball than any golf ball before known. The defendant contends, with regard to the patented golf ball as with regard to its own, that their relative resiliency is practically the same on all strokes of the game. Whether this is true or not is a question of fact upon which the evidence is conflicting, and both sides have relied upon experiments, some made by dropping balls from equal heights in the presence of the court, and some made out of court by witnesses who have described the experiments and their results. Experts in the manufacture of golf balls and accomplished players of the game have testified on both sides.

In view of all the evidence, I have been unable to accept the defendant's contention, and think the plaintiff has fairly proved that its patented golf ball does differ from any predecessor in that by a stroke moderated with adequate skill the entire structure can be propelled without distorting it enough to evoke any of the elasticity which resides in the rubber-wound core; while the benefit of that elasticity remains nevertheless available when desired, under a stroke of force sufficient to overcome the relative rigidity of the shell. Of the experiments testified to, those in which the distortion or deformation of the shell under strokes of varying force has been compared, by blackening the face of the driver used and observing the extent to which the shell was marked by the stroke, have seemed to me the most convincing.

Their results strongly support the above conclusion. If the facts are as I have above found, there is a class of strokes whereby the patented golf ball can be made to behave as if it had not that elasticity which it is capable of displaying under heavier strokes, and which, when so displayed, is greater (as is not disputed) than that of any previous golf ball. This, upon the evidence, I must regard as a distinct advantage in a golf ball, and one not possessed by any previous ball. The patentees' core and shell in combination, therefore, produce a new mode of operation; nor has this been done merely by inclosing a rubber-wound ball in any gutta-percha cover—the cover must be a "shell" and have those qualities relatively to what it incloses which the patent describes. I am consequently unable to hold the patent void as disclosing no patentable invention.

The patentees took out a British patent for their alleged invention, being No. 17,554, issued to them, as amended, January 29, 1903. The plaintiff brought a suit for infringement of this patent, which was decided against him in the Chancery Division. The decision was affirmed by the Court of Appeals, and afterward before the House of Lords. The British patent was put in evidence by the defendant in this case. The proceedings in the suit upon it are before this court only so far as they appear in the published reports. Haskell, etc., Co. v. Hutchison, 22 Rep. Pat. Cases, 478; Id., 23 Rep. Pat. Cases, 301; Id., 25 Rep. Pat. Cases, 194. In the defendant's answer it is alleged that the subject-matter of the British patent was substantially identical with the claims of the patent here sued on, and that all said claims were held invalid for lack of patentable novelty.

It appears from the reports above cited that in the Chancery Division Mr. Justice Buckley found against the plaintiff on the issue of novelty, holding that the construction of the patent had been anticipated, that in the Court of Appeals one of the judges took the same view, the other two holding also that the patent disclosed no patentable novelty, and that in the House of Lords three of the judgments concurred in holding that there was no novelty and no patentable subject-matter, the fourth holding that the cover of the patented ball was old, the interior also old, and that the combination of the two had been anticipated.

The defendant in this case relies considerably upon these decisions. The plaintiff contends that they are not properly before the court, and has not dealt with them in its brief. Not enough is found in the reports regarding the evidence before the English courts to disclose its exact nature and scope, but it does appear, in all the judgments holding the patent invalid, that the evidence was thought not to sustain the claim that the patented ball possessed the contradictory qualities claimed for it by the plaintiff—in other words, that by the combination of the patent no new mode of operation was produced. As has been stated, the evidence before me has led me to the opposite conclusion. I have been unable to find in the reports of the English case relied on anything to prevent that conclusion. The record in the case before me does not afford the means for an accurate comparison of the

issues and proof which were before the English courts and those here presented. But an examination of the British patent, here in evidence, shows it to be by no means identical with the patent here in suit. It has four claims, all for "a ball," etc., instead of "a golf ball," although the improved ball of the patent is said in the specifications to be for use more especially in the game of golf. The two claims most nearly like those of the patent in suit omit the words referring to the shell "of such thickness as to give it the required rigidity," nor are those words found in any of the claims. The two other claims provide as to the shell only that it is to be "of relatively hard, inelastic material," not that it is to be of gutta-percha; in this respect resembling claims included by the patentees in their application for the patent sued on, but stricken out and disallowed by the United States Patent Office, as appears from the file wrapper.

3. Coming to the contention that the patent in suit was anticipated, the alleged anticipations principally relied on are balls said to have been made under United States patent to Castle, No. 281,238, July 17, 1883, for a "baseball." By the terms of Castle's patent, the material of which his ball was to be made was "not a matter of the slightest importance"; the invention which he claims lay in a seamless gutta-percha cover, to be deposited on the ball by dipping it in a liquid solution. There is evidence that Castle made polo balls at his factory in Bridgeport, Conn., between 1883 and 1887, the gutta-percha covers whereof contained balls composed of rubber-wound centers with an inclosing outer layer of woolen yarn. There is also evidence that Warner Bros., of Bridgeport, made rubber-wound baseballs, or rubber-wound balls for boys' use, which they had covered with gutta-percha at his factory; also that balls of the above kinds were sold and used to some extent. In 1891 Warner Bros. sold their business, after which date no manufacture or sale of any of the above balls appears. None of them have been produced, and the evidence about them, given after a lapse of 20 years, lacks the support of such "concrete, visible, cotemporaneous proofs which speak for themselves" as are held necessary in this circuit to establish the defense of anticipation under like circumstances. Emerson, etc., Co. v. Simpson, 202 Fed. 747, 121 C. C. A. 113; De Laski, etc., Co. v. Fisk, etc., Co., 203 Fed. 986, 122 C. C. A. 286. And even if it be conceded that the rubber-wound centers of the balls referred to were substantially identical in character with the rubber-wound center of the patent in suit, the evidence regarding them fails to show that their gutta-percha covers had the qualities required by the patent in suit in its inclosing shell, "of such thickness as to give it the required rigidity." It is obvious that at the time they are said to have been made and sold there could have been no idea of using or adapting these balls for use in the game of golf. Castle's patent, it may be added, can hardly be said to contemplate anything which could properly be described as a "shell." The covering which it does describe is the kind of covering to be obtained by dipping the ball into a liquid solution, and it recommends that the gutta-percha be allowed to sink into the "interstices" of the ball or core dipped. The

shell of the patent in suit is preferably to be obtained by inclosing the core in sheets of gutta-percha, softened only to "a certain degree of plasticity," and then molding the whole to the exact desired shape.

The defendant has shown that a golf ball consisting of a solid rubber center inclosed in a gutta-percha cover or jacket, was devised by Mr. Sweeney and Dr. Schuyler in 1896 or 1897. Such golf balls, made by or for them, were used experimentally at Albany and at Poland, Me., in 1897 or 1898, and were found to travel farther than solid gutta-percha balls, when driven. Specimens consisting of centers and of fragments of the inclosing covers were produced. Only one was ever sold, and the manufacture was soon abandoned. They do not seem to me to have been enough like the golf ball of the patent to constitute an anticipation, in any event; and the evidence about them establishes only an abandoned experiment.

I must hold the patent valid, not anticipated, and infringed by the defendant. A decree may be entered accordingly.