CHICAGO GRAIN DOOR CO. v. NATIONAL MALLEABLE CASTINGS CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 16, 1909.)

No. 1,938.

PATENTS (§ 328*)—ANTICIPATION—BRACKET FOR CAR DOORS.

The Hill patent, No. 527,792, for a bracket for car doors, fastened to the side of the car by a screw having a square countersunk head, not rotatable on the bracket, and removable only by revolving the bracket itself, which cannot be done when the door is closed, is void for anticipation by the Eubank patent, No. 512,467, the device of which operates on the same principle; the only difference being that instead of a screw, a stud integral with the bracket, and having flanges working in the manner of the threads of a screw, is used.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Suit in equity for infringement of patent by the Chicago Grain Door Company against the National Malleable Castings Company and A. A. Pope. From a decree dismissing the bill, complainant appeals. Affirmed.

O. R. Barnett, for appellant.

C. P. Byrnes, for appellees.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

SEVERENS, Circuit Judge. The patent of the appellant, for the infringement of which this suit was brought, is No. 527,792, and was granted to Edward A. Hill, October 23, 1894, for an invention by him of improvements in brackets for car doors. The appellant derives his title from him and his assignees. The defenses are that the invention was anticipated by an earlier patent to Eubank, No. 512,467 and a prior use of similar devices by the Louisville & Nashville Railroad Company, and that the defendants do not infringe. At the hearing upon pleading and proofs, the court held that there was no novelty in the supposed invention; that it was anticipated by the Eubank patent,

and probably by the prior use above mentioned; and, further, that, if the appellant's patent were held valid, the appellees have not infringed it. Thereupon the bill was dismissed.

It appears that, prior to either of the inventions above mentioned, brackets for car doors had long been in use for the purpose of guiding the doors while sliding along the side of the car, and preventing them from opening away from the car at the bottom. Such brackets consisted of cast-iron plates, having a flat inner surface where they came in contact with the car, a horizontal offset a little wider than the thickness of the door, and an upward projection at the outer end of the offset. This upward projection overlapped the outside of the door at the bottom. The brackets were fastened to the side of the car by ordinary screws running into the sill, or by bolts running through it. The door was also equipped with a lock and seal at one side. Depredations by thieves upon the cars, while they were closed and locked, for the purpose of stealing their contents, had become common. Their method of getting into a car was by taking out the screws or bolts by which the brackets were attached. This being done, the lower part of the door was pulled outwardly to a sufficient extent to enable the thief to get in. After getting his plunder, he came out, put the brackets back, and attached them as before. So no indication from the appearance of the car that it had been opened would be given to operators or inspectors. It was the object of these inventions to provide means for attaching the brackets to the car in such a way that they would be inaccessible to the thief when the door was closed. It had been customary to make this attachment by three screws or bolts, the central one being at and somewhat below the middle of the horizontal length of the bracket; and all of them had their heads exposed.

Hill's method, as disclosed by his patent, was to use a lag screw, having a square head, at the middle of the length of the bracket, and countersink it in the outer surface of the bracket, either by forming a square recess in the casting of only a sufficient size and depth to receive the square head of the lag screw, or by raising two parallel projections on the casting, one on each of the two sides of the hole for the screw and far enough apart to take in the head of the screw. In either case, the bracket and the screw were not rotatable upon each other when the head of the latter was sunk in the recess of the former provided for it; nor could the screw be turned by any other means than by turning the bracket, and this could not be done when the door was closed, because the horizontal extension of the bracket would be under the door. The two outside screws might be taken out, and still the bracket be held fast by the middle screw and the bottom of the door. But when the door stands open, and the end screws are removed, the central lag screw may be turned out by revolving the bracket until the head of the screw rises out of the recess, when it may be seized by a wrench. The bracket is attached by turning in the central lag screw until its head is engaged in the recess of the bracket, or driving it in, whereupon the process is finished by revolving the bracket until the latter is brought up to the side of the car, and thereupon turning in the end screws. All this, of course, while the door is standing open. Then

all is ready for sliding it to its closed position. The whole organization is illustrated by figures 2 and 4 of the drawings which are here inserted.

The claims are as follows:

1. The combination, with a sliding door, of a bracket and an attaching screw or bolt having nonrotative engagement with the bracket; said bracket having movable contact with a part of the structure in such manner as to prevent rotation of the bracket, substantially as set forth.

2. The combination, with a sliding door, of a guide bracket engaged and held against rotation by the door and a retaining screw or bolt having nonrotatable engagement with the bracket, substantially as and for the purpose described.

We think there is sufficient ingenuity in this to justify a patent, unless the device had been anticipated; and this is the next question to be considered. The earlier patent to Eubank disclosed one way by which the same result could be accomplished; that is, so attaching the bracket that its fastening was inaccessible when the door was closed. It appears to have been the first one to have accomplished this object. For this reason it embraced a wider range of equivalents than if it had followed other inventions attaining the same result. Nevertheless, Eubank could not usurp the whole field, but would subject all other devices for attaining the same result by employing the same or substantially equivalent means. To be substantially equivalent means, they must perform the same office by a similar organization and mode of operation. Given the problem of making inaccessible the means of attaching the bracket, he adopted this method of organization: He prepared the place for inserting his fastening by boring a hole into the side of the car, and on two opposite sides of the hole made slots extending to the bottom of the hole. Then on the inner side of the brac'- et he erected a stud, having flanges or projections on the further end adapted to fit the slots at the sides of the hole in the side of the car. These flanges had a narrow beveled edge on one side. In order to effect the attachment, the stud on the bracket was pressed into the hole; the flanges on the further end of the stud passing in through the slots at the sides of the hole. Then, when the stud had reached the bottom of the hole, he turned the bracket a quarter way around. The flanges on the stud, passing out of the slots, entered the wood of

the car sill; the operation ending when each of the flanges was a quarter way around a circle. The bracket was in its place and anchored to the side of the car, and when the door was closed the bracket was immovable, and was held so in precisely the same way as in Hill's patent. Supplementing this description with figures 2 and 4 of the drawings of Eubank, which we here insert, we presume no difficulty will be found in understanding the patent.

In the Eubank patent, the stud was integral with the bracket, and so was not rotatable upon it. In Hill's patent the bracket and the screw were not rotatable upon each other. They were in two parts; but in their application and effect, when applied, they performed the same office and by the same mode of operation. There was no invention in making two parts or two pieces of the integral member as employed by Eubank. Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375; D'Arcy v. Staples & Hanford Co., 161 Fed. 733, and the cases cited at page 742, 88 C. C. A. 606. The threads of the screws of Hill's patent performed the same office as the flanges on the stud of the Eubank patent, and are in substance a multiplication of those flanges. Thus the stud with its flanges are in principle the equivalent with the stem of the lag screw and its threads, and in combination with the bracket make the same or an equivalent organization. In both inventions the same result was accomplished. Slight differences no doubt exist, as must always exist where one device is not a mere copy of another. There is more similarity between these two forms than there is between the combination of Hill's patent and that of the defendants which is alleged to infringe it. It seems to us that the Hill device was an infringement of Eubank's, and, if it was so, the latter was an anticipation of Hill's.

Having reached this conclusion it is unnecessary to consider the structure of the bracket in prior use on the Louisville & Nashville Railroad, which we regard as more remote than Eubank's patent, or the question of infringement.

The judgment must be affirmed, with costs.